UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

HUGH FLEMING,

Plaintiff,

vs.

CITY OF OCEANSIDE, public entity, et al.,

Defendants.

CASE NO. 10cv1090-LAB (BLM)

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Fleming alleges that the City of Oceanside and its fire chiefs discriminated against him on the basis of race, and committed various torts against him, in connection with the failure to promote him to the position of battalion chief in the City's fire department. The parties previously settled a 2007 lawsuit in which Fleming alleged *age* discrimination only. But according to Fleming, in late 2009 he came upon evidence that racial bias (Fleming is white) explained his missed non-promotion. (Compl. ¶ 18.) Now before the Court is the Defendants' motion to dismiss.

## I. Legal Standard

Typically when ruling on a motion to dismiss, the Court recites the relevant legal standard out of habit. Parties are generally familiar with it, and to the extent there is a dispute, it has more to do with applying the standard than properly identifying it. This case

//

is different, because Fleming's brief betrays a fundamental misunderstanding of what his complaint must do.

Fleming assumes it's enough for a complaint to provide a defendant with notice of what the claims against that defendant are. (Opp'n Br. at 3–4.) He relies, ultimately, on the rule of *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." But *Conley* is no longer good law.

Complaints have to allege facts. The factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While a court must draw all reasonable inferences in the plaintiff's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, no legal conclusions need to be accepted as true. *Ashcroft*, 129 S.Ct. at 1949. A complaint doesn't suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* That includes a mere formulaic recitation of the elements of a cause of action; this will not do either. *Twombly*, 550 U.S. at 555.

## II. Racial Discrimination

Fleming's first claim against the Defendants, which he brings under 42 U.S.C. § 1981, alleges that he was qualified for a promotion to battalion chief (Compl. ¶¶ 8–9), that the

Defendants' failure to promote him was based on his race (Compl. ¶ 10), and that "Defendant has engaged in disparate treatment race discrimination" and "intentionally preferred non Caucasian workers." (Compl. ¶ 19.) Fleming claims to have evidence "which clearly disclosed that racial bias against the Plaintiff existed in connection with the 2003 missed promotion," but, curiously, he doesn't specify what that evidence is. (*See* Compl. ¶ 18.)

These are precisely the kinds of conclusory allegations that, under *Twombly* and *Iqbal*, cannot survive a motion to dismiss. Fleming argues they "put Defendant on notice of the nature of the claims against them," citing *Sparrow v. United Air Lines*, 216 F.3d 1111, 1114 (D.C. Cir. 2000), but this just confirms that Fleming doesn't understand the law. *Sparrow* explicitly invoked the standard from *Conley* that *Twombly* retired and *Iqbal* buried, and a simple KeyCite of *Sparrow* reveals that a D.C. district court, faced with *Twombly*, concluded that "*Sparrow* is no longer binding authority . . . ." *Jackson v. Acedo*, Case No. 08-1941, 2009 WL 2619446 at *4 (D.D.C. Aug. 26, 2009).

The only facts Whitmore alleges to sustain his racial discrimination claim are that he is white and that he was not promoted to battalion chief. Standing alone, these do not "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. For this reason, the claim is **DISMISSED**, but **WITHOUT PREJUDICE** to allow Fleming the opportunity to specify the evidence he has that his non-promotion was race-based.

**III. Libel, Invasion of Privacy, and False Light**

Fleming lumps three torts together under his second cause of action against the Defendants. The torts are based, ostensibly, on an internal memorandum opposing his promotion to battalion chief. That memo, which the Defendants have submitted with their pleadings, was written by training officer Robert Dunham and intended for fire chief Jeff Bowman, and it was dated October 19, 2006. (Mot. to Strike, Ex. 4.)

The Court is a slightly confused because Fleming, in the context of his racial discrimination claim, says the memo revealed racial bias "in connection with the *2003* missed promotion" (Compl. ¶ 18), but in the context of his tort claims he says the memo was written

"[i]n connection with the 2007 promotion cycle." (Compl. ¶ 23.) In any event, Defendants argue that the tort claims fail.

**A. Compliance with Tort Claims Act**

California law requires plaintiffs with personal injury claims against a public entity to present the entity with those claims before filing a lawsuit. Cal. Gov. Code § 945.4. They must do so "not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2. Fleming alleges that he discovered the offending memo in "late 2009" (Compl. ¶ 18), and that he filed a claim against the Defendants on November 17, 2009 (Compl. ¶ 14). The Defendants argue that, under § 911.2, Whitmore's claims *accrued* when the memo was transmitted — on October 19, 2006 — over *three years* before Whitmore presented the Defendants with a claim.

As a general rule, "a claim accrues upon the occurrence of the last element essential to the cause of action . . . ." *Brandon v. Gray*, 111 Cal.App.4th 29, 35 (Cal. Ct. App. 2003). But under the "delayed discovery rule," the accrual date "is delayed until the plaintiff is aware of his or her injury and its cause." *Id.* Fleming doesn't specify the precise date on which he obtained the memorandum, but considering his assertion that it was at some point in "late 2009," and that he presented Defendants with his claims on November 17, 2009, it is possible that he complied with the Tort Claims Act. But there are two problems.

First, in order to avail himself of the delayed discovery rule, as Defendants explain, it's not enough for Fleming to just assert that he came upon evidence that grounds his claims well after that evidence came into being. "In order to raise the issue of belated discovery, the plaintiff must state when the discovery was made, the circumstances behind the discovery, and plead facts showing that the failure to discover was reasonable, justifiable and not the result of a failure to investigate or act." *Bastian v. County of San Luis Obispo*, 199 Cal.App.3d 520, 527 (Cal. Ct. App. 1988). The memorandum at issue is dated October 19, 2006. The fact that Fleming had no knowledge of it until three years later begs for some kind of explanation. Fleming does not provide one.

//

The second problem is that California's Tort Claims Act makes an allowance for late claims, but only pursuant to a protocol that Fleming appears to have ignored. Specifically, the law allows plaintiffs who come upon evidence after the six-month limitations period to file a written application for leave to present the claim. Cal. Gov. Code § 911.4(a). "The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." *Id.* at § 911.4(b). Unfortunately, Fleming hasn't filed an application.

The best Fleming can do is say that he "first became aware of the offending memorandum in 2009." (Opp'n Br. at 7.) But without greater factual detail, the claim he presented to the Defendants on November17, 2009 was untimely. This is potentially fatal to the tort claims he now wishes to bring. *City of San Jose v. Superior Court*, 12 Cal.3d 447, 454 (1974). The Court isn't inclined to dismiss them with prejudice, however, because Fleming may be able to amend his complaint to avail himself of the delayed discovery rule, and he may still have time to comply with § 911.4.

**B. Libel and False Light Claims**

The Defendants argue that Fleming's false light claim should be dismissed because it is duplicative of his libel claim — an argument to which Fleming has no response in his opposition brief. Defendants are right that courts have dismissed false light claims where they are accompanied by a claim for libel and the claims are based on the same underlying facts. *See, e.g.*, *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1385 n. 13 (Cal. Ct. App. 1999) ("When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action."); *see also Kapellas v. Kofman*, 1 Cal.3d 20, 35 n. 16 (Cal. Ct. App. 1969) ("Since the complaint contains a specific cause of action for libel, the privacy count, if intended in this light, is superfluous and should be dismissed.")

Even assuming there is a way for Fleming to argue his way around *Eisenberg* and *Kapellas*, the Court would still find that his false light claim is flawed, at least as he pleads it, because there is a difference between the publication element of a libel claim and that of

a false light claim — and he can't satisfy the latter. "Publication for purposes of defamation is sufficient when the publication is to only one person other than the person defamed." *Bindrim v. Mitchell*, 92 Cal.App.3d 61, 79 (Cal. Ct. App. 1979). A false light tort, on the other hand, "must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." *Kinsey v. Macur*, 107 Cal.App.3d 265, 270 (Cal. Ct. App. 1980). Indeed, the first element of a false light claim is that "the defendant caused to be generated publicity of the plaintiff that was false or misleading." *Flores v. Von Kleist*, Case No. 08-CV-2499, 2010 WL 3582540 at *20 (E.D. Cal. Sept. 10, 2010).

In his complaint, Fleming is only able to allege that the intended recipient of the memorandum, Jeff Bowman, received and read it. (Compl. ¶ 26.) He even admits he is uncertain "whether other persons within the CITY OF OCEANSIDE saw the offending memorandum" but wants to take discovery to explore "further publication that might have occurred." (*Id.*) (Fleming also alleges that the false light tort "has been committed anew" because Defendants attached a copy of the memorandum to their motion to dismiss, thereby making it a part of the public record. This argument is as groundless as it creative.) Ultimately, Fleming's false light claim suffers from the same defect that his racial discrimination claim does: Fleming fails to plead sufficient facts to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The sheer possibility that the memo was widely circulated cannot shield the claim from Defendants' motion to dismiss. It is therefore **DISMISSED**. This dismissal is **WITH PREJUDICE**, however, because in addition to the speculative nature of the claim, under *Eisenberg* and *Kapellas* it is redundant in the first place.

**C. Invasion of Privacy**

It isn't clear on the face of Fleming's complaint whether he brings an independent invasion of privacy tort against the Defendants or whether that tort *is* the false light tort. Defendants pick up on this ambiguity. (*See* Br. at 4 n. 1.) In Fleming's opposition brief, however, he makes it clear that the torts are independent.

A plaintiff alleging an invasion of privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 29–30 (1994).[1] Unfortunately, the manner in which Fleming defends this claim in his opposition brief bears no relation to the factual allegations in his complaint. Fleming argues,

> Plaintiff had a reasonable expectation of privacy regarding his personal medical, psychiatric, and other private information. Having disclosed these things to Plaintiff's employer without Plaintiff's consent, and Defendant having apparently relied upon the information to Plaintiff's detriment, the tort is committed.

(Opp'n Br. at 6.) The first problem is that the memorandum, as Fleming describes it in his complaint, did not include any medical or psychiatric information. Fleming alleges the memo accused him of: (1) being unable to read or write; (2) being a racist and misogynist; (3) being dangerous to others; (4) nearly killing a coworker; (5) arguing with and disobeying his superiors; and (6) being emotionally unstable. Certainly, to the extent these allegations are true — and Fleming's libel and false light claims imply they are not — Fleming does not have a privacy interest in most of them. *Maybe*, if he is actually illiterate for reasons that are beyond his control, or if his emotional instability is the result of a psychiatric condition, he has a privacy interest in the nondisclosure of those items, but he has no privacy interest in the fact that he is a racist, a threat to coworkers, and a disagreeable employee (to the extent these accusations are true). The second problem is that it makes little sense to accuse the Defendants of disclosing these items "to Plaintiff's employer" when it is that very employer that Fleming wants to hold liable for the disclosure. And finally, as the Court has just hinted, it is confusing that Fleming would bring libel and false light claims against the Defendants, which carry the implication that the memo was wildly inaccurate, and then tack on an invasion of privacy claim, which carries the opposite implication.

//

---

[1] Fleming relies upon *Hill* in his opposition brief, but to be accurate, the privacy right at issue in that case was California's *constitutional* right to privacy.

Because Fleming has failed to even plead that he has a privacy interest in the allegations contained in the memo, and for the other reasons just given, Fleming's invasion of privacy claim is **DISMISSED WITH PREJUDICE.**

## IV. Anti-SLAPP

The Defendants' motion to strike pursuant to California's anti-SLAPP statute, Cal. Code. P. § 425.16, fails for a very simple reason that both parties miss. The Supreme Court held in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." *Garcetti* was a wrongful discharge case — the plaintiff alleged he was fired for protected speech — but there is no reason to limit the principle to that context. Pursuant to *Garcetti*, courts must now ask whether the plaintiff spoke as a private citizen or a public employee in order to make the threshold determination whether the plaintiff's speech is constitutionally protected. *See, e.g.*, *Jacobson v. Schwarzenegger*, 650 F.Supp.2d 1032, 1050 (C.D. Cal. 2009).

Defendants explain that Dunham's memo was drafted at the request of fire chief Bowman, as part of the formal process of hiring a new battalion chief:

> Three of the Battalion Chiefs assisted the Chief in conducting panel interviews of the candidates, whereas the fourth, BC Robert Dunham . . . was directed by Chief Bowman to prepare a written memorandum setting forth his opinions and recommendations regarding the candidates.

(Strike Br. at 1.) There is therefore no disputing that the offending memo was drafted in the course of Dunham's employment, and that its contents represented the concerns of a fire department *employee* rather than a private citizen — even if Dunham may have, as a private citizen, voiced the same concerns about promoting Fleming. The employee speech cases on which the Defendants rely — *Hyland v. Wonder*, *Thomas v. City of Beaverton*, and *Roth v. Veteran's Admin.* — are distinguishable; the plaintiffs in those cases voiced contrarian concerns that had nothing to do with their duties or responsibilities as public servants.

The Court finds that Dunham's memo was not protected speech under the First Amendment. Defendants' motion to strike on anti-SLAPP grounds is therefore **DENIED**.

The motion may have been misguided, but it was not frivolous, so Fleming's request for fees incurred in opposing the motion is **DENIED**.

**V. Conclusion**

Fleming's racial discrimination and libel claims are dismissed with leave to amend, assuming he can demonstrate compliance with the Tort Claims Act. Fleming's false light and invasion of privacy claims are dismissed without leave to amend; the Court finds that amendment of those claims would be futile. Finally, the Defendants' motion to strike is denied. Fleming may file an amended complaint within 14 days of the date this order is entered.

**IT IS SO ORDERED**.

DATED: December 8, 2010

HONORABLE LARRY ALAN BURNS
United States District Judge