# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGH FLEMING,<br><br>  Plaintiff,<br>  vs.<br><br>CITY OF OCEANSIDE, public entity, et al.,<br><br>  Defendants. | CASE NO. 10cv1090-LAB (BLM)<br><br>**ORDER ON DEFENDANT'S MOTION TO STRIKE** |

Still pending in this case is the Defendants' motion to strike Fleming's complaint on anti-SLAPP grounds. When the motion was first filed, it targeted three causes of action: Fleming's first cause of action for libel, invasion of privacy, and false light; his second cause of action for a violation of the Firefighter's Bill of Rights, and his third cause of action for negligence. Subsequently, Fleming voluntarily dismissed his second cause of action, the Court dismissed his invasion of privacy and false light claims with prejudice, and Fleming filed an amended complaint in which he appears to have dropped his negligence claim. Only Fleming's libel claim, then, remains vulnerable to the motion to strike. For the reasons given below, the Court **DENIES** the motion.

## I.   Background Facts

At issue here is a memorandum that Dunham sent to Fire Chief Jeff Bowman on October 19, 2006 in which Dunham opined on Fleming's fitness to be a battalion chief in the

Oceanside Fire Department. (Perrigo Decl., Ex. 1.) The memo was solicited by Bowman, who as Fire Chief was tasked with filling an open battalion chief position but didn't know any of the three candidates personally or professionally. (Bowman Decl. ¶¶ 7, 9–11.) Bowman conducted personal interviews with the assistance of three acting battalion chiefs, and he asked Dunham "to provide . . . his opinions and recommendations on the three eligible candidates in writing." (*Id.* at ¶ 10.) One of the candidates was Fleming, and Dunham's memo was haardly flattering. He alleged that Fleming was illiterate, a racist, and a misogynist. He alleged that Fleming was driven entirely by emotion, and that he was narcissistic. He alleged that Fleming had suicidal tendencies and was reckless on the job. He alleged that Fleming was insubordinate and paid no attention to safety and training protocols. He wrote, "Hugh has few skills" before concluding "I do not recommend Hugh Fleming for promotion to Battalion Chief."

## II.    Legal Standard

California's anti-SLAPP statute, C.C.P. § 425.16, "allows dismissal, at an early stage, of a lawsuit designed primarily to chill the exercise of First Amendment rights." *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1070–71 (2001). Specifically, the statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike." *Id.* at § 425.16(b)(1).

To prevail on such a motion, Defendants must make "a threshold showing" that the challenged cause of action in fact arises from an act in furtherance of Dunham's First Amendment rights. *Gallanis-Politis v. Medina*, 152 Cal.App.4th 600, 609 (2007); *see also Equilon Enter. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). The statute defines these acts to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral

> statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

C.C.P. § 425.16(e). The entire anti-SLAPP statute is to be construed broadly. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1119 (1999); C.C.P. § 425.16(a). For example, "the definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 479 (2000).

Assuming Defendants can make the requisite threshold showing that the challenged cause of action arose from an act in furtherance of free speech, the burden shifts to Fleming to demonstrative a likelihood of prevailing on the cause of action. C.C.P. § 425.16(b)(1). The plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006) (internal quotations omitted).

### III.     Dunham's Threshold Showing

As explained above, to prevail on the motion to strike, Defendants must first show that Dunham's memo was written "in furtherance of [his] right of petition or free speech under the United States or California Constitution in connection with a public issue." C.C.P. § 425.16(b)(1). "[S]ection 425.16 extends to public employees who issue reports and comment on issues of public interest relating to their official duties," *Bradbury v. Superior Court*, 49 Cal.App.4th 1108, 1115 (1996), and so the critical question here is whether the filling of a battalion chief position in the Fire Department was a matter of public concern. Defendants argue that Dunham's memo "pertained directly to the effectiveness of how the Oceanside Fire Department would operate and function should plaintiff be promoted to the high-level position he sought — an issue of vital interest to citizens regarding the

performance of their government." (Br. at 9.) Fleming, on the other hand, argues that "the assertions of Mr. Dunham are simply statements about a workplace promotional candidacy that has no 'public' relevance." (Opp'n Br. at 9.)

The Court agrees with the Defendants. Oceanside's Fire Department is a public agency charged with the critical task of protecting the public's safety, health, and property. Every citizen of Oceanside, and indeed, any person who passes through Oceanside, may find himself or herself in a situation that requires the Department's immediate and able response. Surely Fleming wouldn't deny that it's a matter of public interest whether Oceanside *has* a fire department. And surely he wouldn't deny that it's a matter of public interest whether the Fire Department carries out its duties competently. It has to follow, then, that it's a matter of public interest whether the Fire Department's battalion chiefs, second in rank only to Fire Chief Bowman, have the appropriate knowledge, experience, and temperament for the job. Dunham's memo spoke precisely to this.

An issue of public interest within the meaning of section 425.16 "is *any issue in which the public is interested*." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008) (emphasis in original). The issue "need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id.* Thus, the Court makes little of Fleming's claim that there was no "open" or "public" debate about his candidacy for battalion chief, and that there was no "highly publicized investigation" into the various candidates for the position. (Opp'n Br. at 6, 8.) The anti-SLAPP statute does not require that the asserted public interest be the subject of a *live* debate or discussion, (even though there was one here). It is sufficient that the speech act at issue addresses a *latent* matter of public interest, such as the public's general and enduring interest that those charged with protecting their safety can be relied upon when duty calls.

Fleming relies upon *DuCharme v. Int'l Bhd. of Elec. Workers*, 110 Cal.App.4th 107, 118 (2003), for the proposition that "the constitutionally protected activity must at a minimum occur in the context of an ongoing controversy, dispute, or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters

of public significance." Opportunistically, though, Fleming omits the preceding language in the sentence: "[W]here the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community) . . . ." *Id.* It is the Defendants' position, and the Court's, that the fitness of battalion chiefs for the job *is* of interest to the public at large, meaning the *DuCharme* principle doesn't apply.

The Court is not persuaded, either, by Fleming's citation of *Rivero v. Am. Fed'n of State, County, and Mun. Employees*, 105 Cal.App.4th 913 (2003). The speech at issue in this case was a union newsletter that called attention to the plight of eight janitorial workers at the hands of Rivero, their supervisor, in a university dorm. The court concluded this was a workplace dispute that did not implicate a matter of public interest. *Id.* at 924. It explained:

> Here, the Union's statements concerned the supervision of a staff of eight custodians by Rivero, an individual who had previously received no public attention or media coverage . . . [I]f the Union were correct, discussion of nearly every workplace dispute would qualify as a matter of public interest. We conclude, instead, that unlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy.

*Id.* Were Dunham's memo solely intended as a report about Fleming's on-the-job conduct, *Rivero* might be relevant — although the Court still sees a difference between the public's interest in the competence of a high-ranking member of a fire department and its interest in the integrity of a janitorial supervisor like Rivero. But the Court is mindful that Dunham's memo wasn't just an inconsequential appraisal of Fleming's job performance; it was a solicited appraisal of Fleming's (and others') fitness for the battalion chief position. This is a matter of public concern. *See, e.g., Gillette v. Delmore*, 886 F.2d 1194, 1197–98 (9th Cir. 1989) (manner in which police performed duties on a particular occasion is matter of public concern).

Finally, Fleming relies on *Olaes v. Nationwide Mut. Ins. Co.*, 135 Cal.App.4th 1501 (2006), which the Court finds as distinguishable from this case as *Rivero*. The plaintiff in *Olaes* alleged he was defamed during his employer's investigation of a sexual harassment complaint against him, and the employer moved to strike on anti-SLAPP grounds. Specifically, it argued that eradicating sexual harassment from the workplace is a

fundamental public interest. *Id.* at 1510. The court agreed with that, but found nonetheless that "an investigation by a private employer concerning a small group of people does not rise to a public interest under section 425.16." *Id.* at 1511. Although Fleming tries to portray Dunham's memo as pertinent only to an internal personnel dispute, the Court finds that *that* dispute falls squarely in the public's interest. At issue, after all, was Fleming's fitness for a public position that carried with it substantial public responsibilities. Even assuming the opposite, the mere fact that one's speech concerns a personnel matter does not strip it of constitutional protection. *See Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). Nor does the fact that Dunham's memo was delivered privately to Bowman does change the analysis. "Section 425.16 . . . governs even private communications, so long as they concern a public issue." *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 897 (9th Cir. 2004); *see also Hyland v. Wonder*, 972 F.2d 1129, 1138–39 (9th Cir. 1992) (freedom of speech not lost to public employee who "arranges to communicate privately with his employer rather than to spread his views before the public") (quoting *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979)).

The Court finds *Roth v. Veteran's Admin. of Gov't of United States*, 856 F.2d 1401, 1406 (9th Cir. 1988), cited by Dunham, to be persuasive. *Roth* involved a physician at a VA hospital who alleged he was terminated after reporting to his supervisors that VA administrators and staff wasted resources, acted unethically, and violated safety regulations. The Ninth Circuit found that the "efficient and ethical operation of the VA and the VA's compliance with applicable rules and regulations are inherently of interest to the public," and it found that the plaintiff's speech was protected by the First Amendment. *Id.* at 1406. *Roth* speaks directly to this case. The efficient and ethical operation of the Oceanside Fire Department is also inherently of public interest, and Dunham's memo reflected his view that the Fire Department would not be well served were Fleming elevated to a battalion chief position. *See also Bradbury*, 49 Cal.App.4th at 1116–17 (anti-SLAPP statute protected district attorney's report and critique of sheriff's conduct surrounding property raid); *Schaffer*

*v. City and County of San Francisco*, 168 Cal.App.4th 992 (2008) (police officers' memo in support of prosecution was within the protection of the anti-SLAPP statute).

For the reasons given above, the Court finds that Defendants have made the requisite prima facie showing that Fleming's claims against them arise from free speech in connection with a public issue. To save those claims, Fleming must therefore establish a probability that he will prevail on the merits. C.C.P. § 425.16(b)(1)

**IV.     Probability of Success**

Fleming must "'state[ ] and substantiate [ ] a legally sufficient claim.'" *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002) (quoting *Briggs*, 19 Cal.4th at 1123). The Court is obligated to consider "the pleadings and evidentiary submissions of both the plaintiff and the defendant," and while it shouldn't weigh the credibility or strength of the evidence, "it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Id.* Thus, "probability" under the anti-SLAPP statute doesn't mean "probability" in the dictionary sense, but rather something closer to "possibility." California courts have read the phrase "probability of prevailing on the merits" as "'requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.'" *Equilon*, 29 Cal.4th at 63 (quoting *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 412 (1996)). Essentially, the Court "evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal.4th 180, 192 (2005).

Defendants make two arguments here, as to why Fleming cannot prevail on his claims. One of those arguments is that he failed to file a timely claim under the California Tort Claims Act, but the Court's earlier order on the Defendants' motion to dismiss contemplated that Fleming might be able to demonstrate compliance with the Act in his amended complaint. (Doc. No. 12 at 5.) That leaves Defendants only with the argument that Fleming cannot prevail on his claims because of section 47 of the California Civil Code, which codifies the common interest privilege.

Section 47 defines a privileged publication as one made

> [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(c).  The parties appear to agree on the central legal significance of section 47(c), which is that Dunham's memo is entitled to the common interest privilege, and therefore cannot be the basis of a libel action, only if it was not drafted with malice.  See *Felton v. Schaeffer*, 229 Cal.App.3d 229, 238 (1991).

Malice requires that an objectionable statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 256 (1984).  As Defendants argue, a "reckless disregard" test is not tantamount to a negligence test, which asks "whether a reasonably prudent person would have published, or would have investigated before publishing, the defamatory statement." *McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 114 (2007).  Rather, under a "reckless disregard" test, the evidence must allow for the conclusion that the defendant was aware that his statements were potentially false.  *Id.*  "[T]o support a finding of actual malice, the failure to investigate must fairly be characterized as demonstrating the speaker purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity of charges." *Id.*

Applying the above standards for malice to the respective declarations of Dunham and Fleming, which are the only pieces of "evidence" the Court has to work with, the Court concludes that Fleming has "stated and substantiated a legally sufficient claim" sufficient to establish a probability of prevailing on his libel claim.  See *Equilon*, 29 Cal.4th at 63.

Dunham testifies in his declaration that his memo contained his "honest opinions and evaluation," (Dunham Decl. ¶ 4) but the Court finds it significant that his declaration fails to lend any support to some of his most condescending remarks — that Fleming cannot speak or write, that he twice attempted suicide, that he "has few skills," that Fleming "must be the strangest duck this organization has ever employed."  Dunham's declaration, at best,

suggests it was his genuine opinion that Fleming had racist and sexist attitudes, that he was reckless and insubordinate on the job, and that he was emotionally unstable.  But even as to these allegations, Fleming's declaration, coupled with his complaint, delivers a sufficient amount of facts to support the claim that Dunham authored his memo with a reckless disregard for the truth.  Not only does Fleming categorically deny almost all of Dunham's allegations, but Dunham himself concedes the list of Fleming's alleged transgressions is "completely undocumented."  To be clear, the Court takes no position on the ultimate merits of Fleming's libel claim, but on the record the Court confronts, it cannot imagine granting summary judgment to Dunham.  Crediting the evidence submitted by Fleming, Dunham's memo is so wildly off-base that is open to the charge that he drafted it in reckless disregard of the truth.  *See Rusheen*, 37 Cal.4th at 1056.  In sum, the Court does not find that the Dunham and Bowman declarations, or any other evidence Defendants bring to bear on the motion to strike, defeat Fleming's libel claim as a matter of law.  *Wilson,* 28 Cal.4th 811, 821.

## V.  Conclusion

The Court finds that Fleming's candidacy for the position of Battalion Chief in the Oceanside Fire Department implicated a matter of public interest.  The Court also finds, though, that Fleming has established a probability of prevailing on the merits of his claim.  The Defendants' motion to strike under California's anti-SLAPP statute is therefore **DENIED**.  The Court does not find that the motion is frivolous, however, and it **DENIES** Fleming's request for fees and costs.

**IT IS SO ORDERED**.

DATED:  January 19, 2011

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge